**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | **CASE NO. 12-36187-H1-11** |
| **ATP OIL & GAS CORPORATION,** | § | **(CHAPTER 11)** |
| | § | |
| **DEBTOR.** | § | |
| | § | |
| **BENNU OIL & GAS, LLC,** | § | |
| | § | |
| **Plaintiff** | § | |
| | § | |
| **v.** | § | **ADVERSARY NO. 14-_____** |
| | § | |
| **CETCO ENERGY SERVICES** | § | |
| **COMPANY, LLC,** | § | |
| | § | |
| **Defendant.** | § | |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Bennu Oil & Gas, LLC, ("Plaintiff" or "Bennu"), the purchaser of certain assets of ATP Oil & Gas Corporation ("ATP" or "Debtor") out of the above referenced Chapter 11 proceeding (the "Bankruptcy Case"), files this Complaint for Declaratory Judgment ("Complaint") against CETCO Energy Services Company, LLC ( "Defendant").  In support thereof, Bennu respectfully states as follows:

**I.     SUMMARY OF COMPLAINT**

1.     On or about April 8, 2014, Defendant filed a Statement of Lien and Privilege ("Statement of Lien") against Davis Offshore, L.P. ("Davis") and Calypso Exploration LLC f/k/a Stephens Production Company, LLC ("Calypso") in Lafourche Parish, Louisiana.  The Statement of Lien purports to encumber Davis and Calypso's "operating interests and operating rights" in the Clipper Property (as hereafter defined).  However, Davis and Calypso have not owned any

interests in the Clipper Property since 2011, when their interests were transferred to the Debtor. The true point of the Statement of Lien is to cloud title to the Clipper Property and obscure whether the Clipper Property constituted property of the Debtor's bankruptcy estate that was sold to Bennu, which it clearly was pursuant to the orders of this Court.

2. Plaintiff seeks a declaratory judgment determining (i) that the entirety of the Clipper Property, including interests Defendant alleges are owned by Davis and Calypso, was property of the Debtor's estate and sold to Bennu; and (ii) that Bennu acquired the Clipper Property (as defined below) free and clear of any statutory liens asserted by the Defendant against the Clipper Property (the "Defendant's Liens") because Defendant's Liens do not constitute "Senior Liens" as defined in this Court's Final Order (A) Approving the Sale of Certain of the Debtor's Assets Free and Clear of Claims and Liens and (B) Approving the Assumption and Assignment of Contracts and Leases [Main Case Docket No. 2706] (the "Final Sale Order").

## II.      JURISDICTION, CONSENT TO ENTRY OF JUDGMENT AND VENUE

3. This Court has jurisdiction over the subject matter of this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334, and General Order 2012-6 of the United States District Court for the Southern District of Texas.  The matters set forth herein are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(A), (K), (N) and (O).

4. The statutory predicates for the relief requested herein are 28 U.S.C. § 2201, 11 U.S.C. §§ 105, 506, and 541, and Rule 7001(2) and (9) of the Federal Rules of Bankruptcy Procedure.

5. Pursuant to Local Bankruptcy Rule 7008-1, Plaintiff consents to the entry of final orders or a judgment by the bankruptcy judge in this adversary proceeding.

6. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

7.      This adversary proceeding is also a proceeding for the determination that Defendant's Liens do not constitute Senior Liens, as that term is defined in the Final Sale Order. Paragraph 5 of the Final Sale Order reads, in pertinent part, as follows:

> This Court shall have exclusive jurisdiction over any dispute as to the amount and priority of any Senior Lien and the Senior Lien Escrow until the Senior Lien Escrow is exhausted; and any such dispute shall be resolved by adversary proceeding unless Purchaser [Bennu] and the holder of such Senior Lien agree otherwise.

Final Sale Order ¶ 5.

### III.    PARTIES

8.      Bennu is a Delaware limited liability company with its principal address at 4600 Post Oak Place, Suite 100, Houston, Texas.

9.      Defendant is a Delaware limited liability company.  Defendant has made a general appearance in the Bankruptcy Case and may be served (i) through its attorney of record Joseph P. Hebert, Liskow & Lewis, PLC, 822 Harding Street, P.O. Box 52008, Lafayette, Louisiana 70505; or (ii) at its principal place of business 1001 Ochsner Boulevard, Suite 425, Covington, Louisiana 70433, Attn: Michael Johnson, President.

### IV.    FACTUAL ALLEGATIONS

10.     On July 18, 2008, Davis, Calypso and ATP filed an Assignment and Bill of Sale in Lafourche Parish, Louisiana, which assigned a 55.3125% interest in that certain Outer Continental Shelf lease located off the coast of Louisiana in the Gulf of Mexico at Green Canyon Block 300 (West Half) (OCS Lease No. 22939) (the "Clipper Property") from Davis and Calypso to ATP. On November 15, 2011, Davis and ATP filed an Assignment and Bill of Sale in Lafourche Parish, Louisiana, which assigned Davis' remaining 26.6875% interest in the Clipper Property to ATP.  On December 15, 2011, Calypso and ATP filed an Assignment and Bill of

Sale in Lafourche Parish, Louisiana, which assigned Calypso's remaining 18% interest in the Clipper Property to ATP.[1]

11.      On August 17, 2012 (the "Petition Date"), ATP filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  At the time of the filing and based on the three previous assignments from Davis and Calypso, ATP held a 100% interest in the Clipper Property.

12.      On or about September 20, 2012, this Court entered the Final Order Pursuant to 11 U.S.C. §§ 105, 107, 361, 363, 364 and 507 (1) Approving Postpetition Financing, (2) Authorizing Use of Cash Collateral, (3) Granting Liens and Providing Superpriority Administrative Expense Status, (4) Granting Adequate Protection, (5) Modifying Automatic Stay and (6) Authorizing Debtor to File the Fee Letter Under Seal [Main Case Docket No. 440] (the "Final DIP Order").  Pursuant to the Final DIP Order, the Debtor was authorized to provide debtor-in-possession financing liens (the "DIP Liens") in substantially all of the assets of the Debtor, including but not limited to, the Clipper Property (the "DIP Collateral").  *See Final DIP Order* at ¶ 6.

13.      As set forth in the Final DIP Order, on or about June 18, 2010, the Debtor entered into a Credit Agreement, which was amended and restated on or about March 9, 2012 (the "Prepetition Credit Agreement"), pursuant to which certain lenders (the "Prepetition Lenders") extended pre-petition loans and financial accommodations to the Debtor.  *See id.* ¶ F(i).  In connection with the Prepetition Credit Agreement, the Debtor granted liens and security interests

---

[1] Calypso has admitted in other litigation pending before this Court that ATP became the sole owner of the Clipper Property in 2011.*See* ¶ 12 of Complaint to (i) Determine Property of the Estate, (ii) for Declaratory Relief, (iii) for Temporary Restraining, (iv) for Injunctive Relief, (v) Authorizing Filing of this Complaint and Exhibits under Seal and (v) for Related Relief in Adversary No. 13-3071 [Dkt No. 1]. This Complaint was verified by Calypso's general counsel.  *See Ford v. Wilson*, 90 F.3d 245 (7th Cir. 1996) (verified complaint treated as an affidavit); *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994).

to the Prepetition Lenders (the "Prepetition Liens") in certain property of the Debtor (the "Prepetition Collateral").  *See id.* at ¶ F(vi)(v).

14.     Pursuant to the Final DIP Order, the Prepetition Lenders obtained DIP Liens on any of the Debtor's property on which they did not already hold liens, including the Clipper Property, and these liens were automatically perfected. *Id*. at ¶ 7.  In terms of priority, the Final DIP Order provides: "The DIP Liens shall be senior in priority and superior to any security, mortgage, collateral interest, lien or claim on or to any of the DIP Collateral, subject only to … (C) with respect to any DIP Collateral not constituting Prepetition Collateral, any valid and enforceable lien rights under state law, or otherwise ("Statutory Liens"), solely to the extent such Statutory Liens are (i) valid, enforceable, and non-avoidable as of the Petition Date, and (ii) timely perfected before or after the Petition Date." *Id*.

15.     On October 17, 2013, the Bankruptcy Court entered the Final Sale Order approving the sale of certain of the Debtor's assets, including the Clipper Property (collectively the "Purchased Assets"), to Bennu.  *See* Final Sale Order, ¶ N.

16.     Pursuant to the Final Sale Order, Bennu acquired the Purchased Assets free and clear of all Statutory Liens other than "Senior Liens," as defined in the Final Sale Order.  *See id.* at ¶ 10.

17.      The Final Sale Order defines "Senior Liens" as the legitimate liens on the Purchased Assets that rank senior in priority to the DIP Liens. *See id.* at ¶ N.

18.     On April 8, 2014, Defendant filed the Statement of Lien in Lafourche Parish, Louisiana.  A copy of the Statement of Lien is attached as **Exhibit A**. The Statement of Lien asserts a claim in the amount of $1,579,358.08 incurred by the Debtor, and purports to encumber Davis's 26.6875% interest in the Clipper Property and Calypso's 18% interest in the Clipper

Property. Implicit in Defendant's Statement of Lien is that some portion of the Clipper Property did not become property of the Debtor's bankruptcy estate, but rather continued to belong to Calypso and Davis after the Petition Date.  However, Calypso and Davis held no property rights in the Clipper Property on which Defendant's alleged liens would attach, and the Statement of Lien serves only to cloud Bennu's title to the Clipper Property.

19.     Upon information and belief, Defendant only performed services for the Debtor related to the Clipper Property after the Petition Date and well after the Final DIP Order was entered.

### COUNT I – DECLARATORY JUDGMENT

20.     The foregoing paragraphs are hereby incorporated as if fully set forth herein.

21.     28 U.S.C. § 2201 provides, in pertinent part, that:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon a filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201.

22.     Pursuant to 28 U.S.C. § 2201 and 11 U.S.C. § 105(a), this Court has the power to declare and adjudicate the rights and obligations of the parties hereto and to grant such other and further relief as may be necessary to enforce the rights and obligations of parties pursuant to the Final Sale Order and the Final DIP Order.

23.     A substantial and actual controversy exists between the Plaintiff and Defendant. Uncertainty and insecurity currently exists with respect to the rights, status, and other legal relations between Bennu and the Defendant regarding liens asserted on and against the Clipper Property.  Entry of a declaratory judgment establishing that the Clipper Property was sold free

and clear of the Defendant's Lien will serve a useful purpose insofar as Bennu, the Defendant, and, potentially, third parties will be afforded certainty regarding their respective rights in the Clipper Property.

24.     Bennu seeks an order from this Court:

(a)     declaring that the entirety of the Clipper Property, including any interests Defendant alleges are owned by Davis and Calypso, became property of the Debtor's estate and was sold to Bennu;

(b)     declaring that liens asserted by the Defendant on the Clipper Property do not constitute "Senior Liens" as that term is defined in the Final Sale Order; and

(c)     declaring that Bennu acquired the Clipper Property free and clear of the liens asserted by the Defendant on the Clipper Property.

25.     Bennu also seeks a permanent injunction from this Court:

(a)     permanently enjoining Defendant from seeking to enforce the liens it has asserted against the Clipper Property;

(b)     affirmatively requiring Defendant to file lien releases in any Louisiana parish where Defendant has previously filed a lien against the Clipper Property; and

(c)     affirmatively requiring Defendant to terminate any lis pendens filed with respect to  liens it has asserted against the Clipper Property.

## PRAYER

Wherefore, Bennu respectfully requests that this matter be set for trial, and that, after final hearing, judgment be entered against Defendant and in favor of Bennu for the following relief:

(1)     declaratory relief as requested herein;

(2)     permanent injunctive relief as requested herein;

(3)     reasonable and necessary costs and fees incurred with respect to this action;

(4)     such other relief to which Bennu may be justly entitled.

**DATED: May ___, 2014**

Respectfully submitted,

**BINGHAM MCCUTCHEN LLP**

By: ___*/s/ Andrew J. Gallo*_____
       Ronald J. Silverman (admitted *pro hac vice*)
       Andrew J. Gallo (admitted *pro hac vice*)
       399 Park Avenue
       New York, New York 10022
       Telephone:  (212) 705-7000
       Facsimile:  (212) 752-5378

       **-AND-**

**WINSTEAD PC**

By: ___*/s/ Phillip L. Lamberson*_____
       Phillip L. Lamberson – SBT No. 00794134
       R. Michael Farquhar – SBT No. 06828500
       (admitted *pro hac vice*)
       S.D. Tex. No. 1066009
       500 Winstead Building
       2728 N. Harwood Street
       Dallas, Texas 75270
       Telephone:  (214) 745-5400
       Facsimile:  (214) 745-5390

**ATTORNEYS FOR BENNU OIL & GAS, LLC**